UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HERBERT FREEMAN, JR., ET AL.          CIVIL ACTION

VERSUS                                NO: 06-4846 C/W
                                      06-5689 & 06-5696

UNITED STATES DEPARTMENT OF           SECTION: "A" (5)
HOMELAND SECURITY, ET AL.

**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss (Rec. Doc. 13)** filed
by the United States of America, Michael Chertoff, in his
official capacity as Secretary of Homeland Security, the United
States Department of Homeland Security, Michael Leavitt, in his
official capacity as Secretary of Health and Human Services, the
Department of Health and Human Services, Donald Rumsfeld, in his
official capacity as Secretary of Defense, the Federal Emergency
Management Agency, and Michael Brown, in his official capacity as
former director of the Federal Emergency Management Agency
(collectively "Defendants" or "the United States").  Plaintiffs
Herbert Freeman, Jr., Frances Lodriguss, Barbara Eleby Lee,

1

Brenda Bissant, Glenda Eleby, Griffin Eleby, Jr., Rosalie Brooks, Dorothy Beal, Earline Coleman Ethel Jackson, and Nancy Eleby oppose the motion.  The motion, set for hearing on April 4, 2007, is before the Court on the briefs without oral argument.  For the reasons that follow, the motion is GRANTED.

I.   **BACKGROUND**

Plaintiffs in these consolidated cases are the relatives and/or representatives of Ethel Freeman, John J. DeLuca, and Clementine Eleby ("the Decedents").  Each of the Decedents passed away in the days immediately following Hurricane Katrina.  Plaintiffs contend that the deaths were caused by Defendants' failure to follow their lawful duties in the aftermath of Hurricane Katrina.  Defendants move for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### *Civil Action 06-4846*

This action was filed by Herbert Freeman, Jr., individually and in his capacity as representative of the Estate of Ethel Freeman.  Prior to Katrina, Mrs. Freeman was elderly and infirm and required a wheelchair for mobility.  The Freemans rode out the storm in their New Orleans home but the home flooded in the aftermath of Katrina when the levees gave way.  Mr. Freeman secured a boat from a friend and placed Mrs. Freeman, and her

2

wheelchair in the boat.  Mr. Freeman proceeded to higher ground
and New Orleans Police officers eventually directed the Freemans
to the New Orleans Convention Center.

Mr. Freeman alleges that the Convention Center was not
manned or equipped to handle evacuees.  He complains that the
conditions were squalid and that no triage, food, water, or
medical assistance was provided.  Mrs. Freeman died on Wednesday,
September 1, 2005.

Freeman alleges that Defendants failed to follow their non-
discretionary duties under the National Response Plan ("NRP") to
take appropriate steps to marshal resources and to aid the city,
the state, and evacuees like Mrs. Freeman.  (Comp. ¶ 25).
Freeman claims that Defendants' negligence in failing to provide
adequate shelter, medical services, triage, evacuation, and
transport to facilities where appropriate medical care could be
provided resulted in Mrs. Freeman's wrongful death.  (Id. ¶ 26).

Freeman also claims that by failing to follow "the public
law, the Stafford Act and public policy, the National Response
Plan" Defendants denied Mrs. Freeman equal protection under the
law because she was discriminated against because of her age and
infirmity.  (Amend. Comp. ¶ 3).  Freeman alleges that the
violation of Mrs. Freeman's equal protections rights under the
Fourteenth Amendment proximately caused her death. (Id. ¶¶ 4-6).

3

Freeman submitted an administrative tort claim to FEMA, DHHS, and DOD.  DHHS denied the claim but FEMA and DOD have yet to issue denials.  Freeman seeks wrongful death and survivor action damages for the loss of his mother.

### Civil Action 06-5689

This action was filed by Frances Lodriguss, the sister of the decedent John J. DeLuca.  Prior to Katrina, Mr. DeLuca was a seventy-seven year old mobility impaired, chronically ill man who resided at the Nazareth Inn, an independent and assisted living facility located in New Orleans East.  Mr. DeLuca rode out Katrina at the Nazareth Inn but was trapped by flood waters in the storm's aftermath.  Mr. DeLuca was taken by helicopter to a location on Interstate 10 at its interchange with Causeway Boulevard.

According to the complaint, there was no shelter, food, water, security, medical services or transportation at this location.  (Comp. ¶ 21).  Buses began to arrive on August 31st but no one was in charge to ensure the evacuation of the elderly and infirm.  (Id. ¶ 22).  On September 2, 2005, Mr. DeLuca collapsed and was taken by helicopter to the airport.  Mr. DeLuca died on September 3, 2005.

Lodriguss alleges that Defendants owed Mr. DeLuca a duty of care to provide transportation and medical care in the aftermath

4

of the storm.  Lodriguss alleges that Defendants' failure to deliver a rapid and appropriate federal response was the proximate cause of Mr. DeLuca's death and was in violation of his rights to equal protection under the Fourteenth Amendment to the U.S. Constitution, federal law, and public policy.  (Id. ¶ 28). Lodriguss alleges that Defendants' negligence and/or their adoption of an unconstitutional policy which deprived the elderly and infirm of an equal chance of survival violated her brother's constitutional rights and caused his death.  (Id. ¶ 30). Lodriguss seeks wrongful death and survivor action damages for the loss of her brother.

### *Civil Action 06-5696*

This action was filed by Barbara Eleby Lee, Brenda Bissant, Glenda Eleby, Griffin Eleby, Jr., Rosalie Brooks, Dorothy Beal, Earline Coleman Ethel Jackson, and Nancy Eleby, the children of the decedent Clementine Eleby.  Prior to Katrina, Ms. Eleby was a seventy-nine year old bedridden paralyzed woman who was residing with her daughter Barbara Eleby Lee in New Orleans East.  The Elebys rode out the storm in their New Orleans East home but were trapped by flood waters in the storm's aftermath.  The Elebys were eventually transported to the Convention Center where they arrived on August 31, 2005.

Plaintiffs allege that the Convention Center was not manned

or equipped to handle evacuees.  They complain that the
conditions were squalid and that no triage, food, water, or
medical assistance was provided.  Mrs. Eleby died at the
Convention Center on September 1, 2005.

Plaintiffs allege Defendants' failure to deliver a rapid and
appropriate federal response was the proximate cause of Mrs.
Eleby's death and was in violation of her rights to equal
protection under the Fourteenth Amendment to the U.S.
Constitution, federal law, and public policy.  (Id. ¶ 31).
Plaintiffs allege that Defendants' negligence and/or their
adoption of an unconstitutional policy which deprived the elderly
and infirm of an equal chance of survival violated their mother's
constitutional rights and caused her death.  (Id. ¶ 33).
Plaintiffs seek wrongful death and survivor action damages for
the loss of their mother.

## II.  THE PARTIES' CONTENTIONS

Defendants' motion pertains to the claims against the United
States and the individual defendants *in their official capacities
only*.  Defendants contend that dismissal is proper under Rule
12(b)(1) (lack of subject matter jurisdiction) because the Court
lacks jurisdiction over these claims because the United States
has not waived its sovereign immunity with respect to the claims
at issue.  Specifically, Defendants contend that neither the

Stafford Act, the Administrative Procedure Act, nor the Federal Tort Claims Act ("FTCA") provide a waiver of sovereign immunity. Further, Defendants contend that the waiver of immunity contained in the Stafford Act and FTCA does not apply because the provision of disaster assistance in the aftermath of Katrina is a discretionary act excepted from the waiver of sovereign immunity contained in those statutory provisions.

Next, Defendants contend that dismissal of the Fourteenth Amendment claims is proper under Rule 12(b)(6) (failure to state a claim upon which relief can be granted) because the Fourteenth Amendment applies only to States' actions and not to actions by the United States.  Finally, Defendants contend that Plaintiffs' claims (with one exception as to Freeman) are not actionable under the FTCA because they have failed to satisfy the jurisdictional prerequisites to sue the United States in tort.

In opposition, Plaintiffs clarify that they do not oppose dismissal of the Fourteenth Amendment claims against Defendants in their official capacities because the guarantee of equal protection binds only the States.

Plaintiffs argue that Congress did not confer total immunity on the United States when it passed the Stafford Act.  Rather, the Act includes discretionary function exception language much like that contained in the FTCA.

7

Plaintiffs concede that Freeman is the only Plaintiff with a FTCA claim currently pending in this litigation and that this claim is directed at FEMA's conduct in the aftermath of Katrina. Freeman contends that his complaint alleges the breach of non-discretionary duties and that the Court cannot resolve any underlying fact disputes under the guise of ruling on a 12(b)(1) or 12(b)(6) motion.  Freeman contends that additional discovery is needed to determine more precisely the facts regarding the failures of FEMA in the preparation for and response to the storm.  Freeman contends that the federal government has no discretion when it comes to its duty to comply with mandatory policies and regulations dictating the measures to be taken to protect the citizenry from the aftermath of disasters.

In reply, Defendants point out that concessions in Plaintiffs' opposition narrow the focus of the pending motion to whether the discretionary function exceptions within the Stafford Act and the FTCA apply.

## III. <u>DISCUSSION</u>

### 1.  *General Legal Principles*

In general where subject matter jurisdiction is being challenged under Rule 12(b)(1), the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.  <u>Montez v. Dep't</u>

of Navy, 392 F.3d 147, 149 (5th Cir. 2004) (citing <u>Land v.</u>
<u>Dollar</u>, 330 U.S. 731 (1947)).  No presumptive truthfulness
attaches to the plaintiff's allegations and the court can decide
disputed issues of material fact in order to determine whether or
not it has jurisdiction to hear the case.  <u>Id.</u>  However, where
issues of fact are central both to subject matter jurisdiction
and the claim on the merits, the trial court must assume
jurisdiction and proceed to the merits of plaintiff's case under
either Rule 12(b)(6) or Rule 56.  <u>Id.</u> (citing <u>Williamson v.</u>
<u>Tucker</u>, 645 F.2d 404 (5th Cir. 1981)).  Under well-settled
standards governing Rule 12(b)(6) motions to dismiss, a claim may
not be dismissed unless it appears certain that the plaintiff
cannot prove any set of facts that would entitle him to legal
relief.  <u>In re Supreme Beef Processors, Inc.</u>, 468 F.3d 248, 251
(5th Cir. 2006) (citing <u>Benton v. United States</u>, 960 F.2d 19 (5th
Cir. 1992)).

The doctrine of sovereign immunity renders the United
States, its departments, and its employees in their official
capacities immune from suit except as the United States has
consented to be sued.  <u>Williamson v. United States Dep't of</u>
<u>Agriculture</u>, 815 F.2d 368, 373 (5th Cir. 1987).  Absent an
express waiver of federal immunity by Congress, the United
States, its departments, and its employees in their official

capacities are immune from suit.  <u>Supreme Beef Processors</u>, 468
F.2d at 252.  A waiver of the United States' sovereign immunity
must be unequivocally expressed in statutory text.  <u>Lane v. Pena</u>,
518 U.S. 187, 192 (1996).  Waivers of sovereign immunity are
narrowly construed in favor of the United States.  <u>Id.</u>

Congress partially waived the United States' sovereign
immunity from tort claims by enacting the Federal Tort Claims Act
("FTCA"), 28 U.S.C. § 1346(b).[1]  <u>Brown v. United States</u>, 653 F.2d
196, 198 (5th Cir. 1981).  The FTCA allows a plaintiff to pursue
tort actions against the federal government and it holds the
government liable as if it were a defendant in state court.
<u>Supreme Beef Processors</u>, 468 F.3d at 252.  The liability of the
United States under the Act arises only when the law of the state
would impose it.  <u>Brown</u>, 653 F.2d at 201.  The FTCA is the sole
basis of recovery for tort claims against the United States.

---

[1] 28 U.S.C. § 1346, entitled United States as a Defendant,
provides that the district courts shall have exclusive
jurisdiction of civil actions on claims against the United
States, for money damages

for injury or loss of property, or personal injury or
death caused by the negligent or wrongful act or omission
of any employee of the Government while acting within the
scope of his office or employment, under circumstances
where the United States, if a private person, would be
liable to the claimant in accordance with the law of the
place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1) (West 2006).

Supreme Beef Processors, 468 F.3d at 252 n.4.  The FTCA is subject to strict limitations one of which is the discretionary function exception codified at 28 U.S.C. § 2680(a).[2]  When applicable the discretionary function exception deprives the court of subject matter jurisdiction and it cannot be waived. Id. (citing Hayes v. United States, 899 F.2d 438 (5th Cir. 1990)).

The Stafford Act, also known as the Disaster Relief Act of 1974, was enacted to provide federal assistance to states in times of disasters.  Diversified Carting, Inc. v. City of N.Y., 423 F. Supp. 2d 85, 90 (S.D.N.Y 2005) (citing 42 U.S.C. § 5121, et seq.).  To the extent that the Stafford Act allows for a private right of action against the federal government,[3] the

---

[2] 28 U.S.C. § 2680, entitled Exceptions, provides that the FTCA waiver of immunity does not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a) (West 2006).

[3] See Graham v. FEMA, 149 F.3d 997, 1001 (9th Cir. 1998) ("[T]he Stafford Act does not provide for a private cause of action upon which the plaintiffs may rely . . . ."). But see Diversified Carting, Inc. v. City of N.Y., 423 F. Supp. 2d 85, 90-91 (S.D.N.Y. 2005) (implicitly recognizing a private right of

United States retains its sovereign immunity with respect to any activities that are "based on the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of [the Act]." 42 U.S.C.A. § 5148 (West 2003).  Courts generally use the same discretionary function exception analysis for claims brought under the Stafford Act as well as the FTCA.  See, e.g., McWaters, 408 F. Supp. 2d at 229.

### 2. *Analysis*

All claims under attack at this juncture are claims against the United States directly, and claims against federal employees in their *official* capacities, which are in effect claims against the United States.  The United States cannot be sued absent an express and unequivocal waiver of sovereign immunity so the first hurdle that Plaintiffs must clear is the sovereign immunity bar. If the United States has not expressly waived its sovereign immunity for the claims at issue, then the Court lacks subject matter jurisdiction over the claims and they are subject to dismissal pursuant to Rule 12(b)(1).  The Court does not believe

---

action under the Stafford Act); McWaters v. FEMA, 408 F. Supp. 22
221, 228–29 (E.D. La. 2006) (implicitly recognizing a private
right of action under the Stafford Act).

that issues of fact play a key role in the sovereign immunity analysis but to the extent that they do the Court will follow the standards applicable to Rule 12(b)(6) motions to dismiss and construe all disputed facts in Plaintiffs' favor.

The claims against the United States are brought under the FTCA and the Stafford Act.[4]  The FTCA includes express statutory text that waives immunity for certain tort claims so long as the claim is not based on a discretionary function or duty.  The Stafford Act, on the other hand, contains no express and unequivocal language purporting to waive the United States' immunity from suit.  However, § 5148 of the Act[5] is a

---

[4] The instant motion does not challenge the <u>Bivens</u> claims brought against the individual defendants in their personal or non-official capacities.  Under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and its progeny, victims of a constitutional violation by a federal agent have a right of action to recover damages against the agent in his individual capacity.  <u>Williamson</u>, 815 F.2d at 380. However, the United States does not become vicariously liable for the constitutional torts of its officials because the United States has not waived sovereign immunity for such actions. <u>Brown</u>, 653 F.2d at 199.

[5] Section 5148, Nonliability of Federal Government, provides:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C.A. § 5148 (West 2003).

discretionary function exception, and Plaintiffs reason that Congress must have intended to allow some claims under the Act because § 5148 would not be necessary if all claims under the Act were already barred by sovereign immunity.  The Court questions whether such reverse reasoning suffices under the strict requirements imposed by the Supreme Court's jurisprudence in order to find a waiver of sovereign immunity.[6]  See, e.g., Lane, 518 U.S. at 192.

Clearly, however, to the extent that a waiver of immunity does exist under the Stafford Act, actions based on discretionary functions are not included in that waiver.  See 42 U.S.C.A. § 5148.  At this juncture, the Court will assume that the Stafford Act does contain a limited waiver of immunity for non-discretionary functions.  Because both the FTCA and the Stafford Act include discretionary function exceptions, the sole issue before the Court today is whether Plaintiffs' claims are based

---

[6] Even if the Stafford Act provides no express waiver of sovereign immunity, the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq., contains a limited waiver of sovereign immunity to permit judicial review to those aggrieved of agency actions.  However, the waiver of immunity contained in the APA, which also includes a discretionary function exception, does not allow for the recovery of money damages against the United States.  Taydus v. Cisneros, 902 F. Supp. 278 284 (D. Mass. 1995) (citing 5 U.S.C. § 702); Armstead v. Nagin, No. 05-6438, 2006 WL 3861769, at * 8 (E.D. La. Dec. 29, 2006) (Duval, J.).  Given that Plaintiffs are seeking to recover money damages for wrongful death they cannot take advantage of the APA's waiver of sovereign immunity as a means of going forward with this lawsuit.

upon the performance (or non-performance) of a discretionary function or duty on the part of Defendants.  If the discretionary function exception applies, then sovereign immunity will bar Plaintiffs' claims.

### 3.   *Discretionary Function Analysis*

Courts use the same Berkovitz discretionary function analysis for claims brought under the FTCA and the Stafford Act. See, e.g., McWaters, 408 F. Supp. 2d at 229.  In Berkovitz v. United States, the Supreme Court explained and expounded upon the established principles that guide the  determination of whether the discretionary function exception bars a suit against the United States.  486 U.S. 531, 536 (1988).  "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case."  Id. (quoting United States v. Variq Airlines, 467 U.S. 797, 813 (1984)).  In examining the nature of the challenged conduct, a court must first consider whether the conduct involves an element of judgment or choice for the acting employee.  Id. (citing Dalehite v. United States, 346 U.S. 15 (1953)).  The discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.  Id.  In this event the employee has no rightful option but to adhere to the directive.

Id.

Assuming the challenged conduct involves an element of judgment, the court must then determine whether that judgment is the kind that the discretionary function exception was designed to shield. Berkovitz, 486 U.S. at 536. The discretionary function exception serves to "prevent judicial 'second guessing' of legislative and administrative decisions ground in social, economic, and political policy through the medium of an action in tort." Id. (quoting Varig Airlines, 467 U.S. at 814). The exception properly construed protects only governmental actions and decisions based on public policy. Berkovitz, 486 U.S. at 537. In sum, the discretionary function exception insulates the United States from liability if the action challenged in the case involves the permissible exercise of policy judgment. Id.

Pursuant to Berkovitz, this Court must analyze Plaintiffs' specific allegations of governmental wrongdoing in light of the applicable statutory and regulatory scheme governing the provision of disaster relief following a natural disaster such as Hurricane Katrina. In particular, Plaintiffs must identify a specific *mandatory* directive that Defendants had a clear duty under federal law to perform. And if the specific mandatory directive nevertheless involves an element of judgment, then application of the discretionary function exception will turn on

16

whether the officials making that judgment permissibly exercised policy choice.  <u>Berkovitz</u>, 486 U.S. at 545.

The Stafford Act is codified at 42 U.S.C. §§ 5121, <u>et seq.</u> Freeman[7] points to no specific, *mandatory* directive found within the statutory scheme of the Stafford Act or its accompanying federal regulations that Defendants are alleged to have ignored in the aftermath of Katrina.  Defendants correctly point out that the Act is replete with discretionary language particularly in those sections that address federal emergency assistance.  <u>See, e.g.</u>, 42 U.S.C.A. § 5192 (West 2003) ("In any emergency, the President ***may*** direct any Federal agency . . . to utilize its authorities and the resources granted to it under Federal law . . . in support of State and local emergency assistance efforts to save lives, protect property and public health and safety, and lessen or avert the threat of a catastrophe.") (emphasis added). Freeman cannot meet the threshold requirement for a waiver of immunity under the Stafford Act, <u>i.e.</u>, identification of a *mandatory* duty under the law.  Thus, Freeman's claims under the

_____

[7] The parties agree that at this time Freeman is the only plaintiff in the consolidated cases with an FTCA claim currently pending before the Court.  That claim has been asserted against FEMA and the Department of Homeland Security.  At this time Lodriguss and the Eleby plaintiffs are alleging claims based solely on violations of the Decedents' constitutional rights. Lodriguss and the Eleby plaintiffs anticipate eventually amending their complaints to add claims under the FTCA.

Stafford Act are barred by sovereign immunity.

Freeman also relies upon the National Response Plan as the source of a mandatory directive or duty imposed on Defendants under federal law.  The National Response Plan ("NRP") was developed by the Secretary of the Department of Homeland ("DHS") at the direction of the President.  Homeland Security Presidential Directive/HSPD-5, 2003 WL 604606 (Feb. 28, 2003). The purpose of the HSPD-5 is to "enhance the ability of the United States to manage domestic incidents by establishing a single, comprehensive national incident management system."  Id. The main goal of HSPD-5 was to come up with a plan so that all levels of government would have the capability to work together to prevent and respond to terrorist attacks, major disasters, and other emergencies.  Id.  HSPD-5 expressly notes that "[i]nitial responsibility for managing domestic incidents generally falls on State and local authorities.  The Federal Government will assist State and local authorities when their resources are overwhelmed, or when Federal interests are involved."  Id.

As part of HSPD-5 the President directed the Secretary of Homeland Security to develop the NRP which "shall integrate Federal Government domestic prevention, preparedness, response, and recovery plans into one all-discipline, all hazards plan." Id.  The NRP, with respect to domestic incidents, was to provide

18

the structure and mechanisms for national level policy and operational direction for Federal support to State and local incident managers . . . ." Id.  The NRP, as envisioned by the President, would include protocols for operating under different threats or threat levels, incorporate existing federal emergency and incident plans.  Id.  The NRP was to include a "consistent approach to reporting incidents, providing assessments, and making recommendations to the President . . . ." Id.

The version of the NRP relied upon by Freeman is dated December 2004 and a six page excerpt is filed in the record. (Pla. Oppo. Exh. 1).  This document, which was authored by a single agency head, is not an executive order, Congressional statute, or properly promulgated federal regulation so as to constitute federal "law."  It is a questionable legal proposition to say the least that this document could be used as a basis for imposing a mandatory, non-discretionary duty under federal law, the likes of which could be used to overcome the United States' sovereign immunity.

Freeman's reliance on the NRP is also problematic because the NRP does not prescribe a specific course of conduct for federal employees to follow.  Freeman quotes several passages from the NRP and alleges that the NRP called for DHS and FEMA to deploy vital resources including medical teams and equipment to

19

evacuate patients who needed medical care and to comply with an urgent duty to save lives.  (Freeman Comp. ¶ 25).  Freeman alleges that Defendants had a non-discretionary duty under the NRP to take appropriate steps to marshal resources and to aid the city, the state and evacuees, including Freeman.  (Id.).

The NRP and its Annexes are worded for the most part in precatory language and even where stronger "must" language is used the document is still a very high level overview of the anticipated rollout plan for federal resources during a domestic incident.  Likewise, the annex sections quoted by Freeman in his complaint recognize from a practical perspective the things that need to occur following a domestic incident.  However, implicit in the structure of this generalized document is the discretion and flexibility that the affected agencies retain to allocate their limited resources in response to a disaster such as Hurricane Katrina.  The NRP simply does not provide a source of non-discretionary *duties* imposed on Defendants under federal law. Further, the timing and scope of FEMA's allocation of resources in the aftermath of Katrina not only includes the element of judgment or choice for the acting agency employees but that element of choice is clearly one grounded in social, economic, and public policy.

Plaintiffs assert that Defendants' motion must be denied

20

because Plaintiffs have alleged in their complaint that
Defendants breached non-discretionary duties, and Plaintiffs
repeatedly point out that they must be afforded an opportunity to
conduct discovery prior to dismissal.  Plaintiffs' contention is
contrary to <u>Berkovitz</u> which makes clear that a mere "assertion"
that a federal actor has breached a non-discretionary duty is
insufficient to avoid dismissal.  Rather, the <u>Berkovitz</u> analysis
demonstrates the need to identify, as a threshold matter, a
*specific* mandatory, non-discretionary directive that the federal
actor has violated.

Further, the fact-based discovery that Plaintiffs are
anxious to obtain only comes into play once they identify the
specific directive that Defendants have ignored.  Such a
directive will be in the public realm and therefore fact
discovery will not assist them in meeting this crucial threshold
requirement.

In sum, the actions being challenged in this lawsuit are the
types of actions that Congress intended to shield from liability
under both the Stafford Act and the FTCA.  One might contend that
the federal decisions made in conjunction with Hurricane Katrina
demonstrated nonchalance and/or incompetence on the part of those
involved.  The Government has publicly admitted that it made many
mistakes in the aftermath of Hurricane Katrina.  One can only

speculate at this point whether these mistakes caused the tragic deaths of the Decedents.

Even assuming that the Government's mistakes caused these deaths, Congress has not exempted such claims from the discretionary function exception.  This Court is very sympathetic to the Plaintiffs for the loss of their loved ones, however, this Court is prohibited from changing the laws that Congress has enacted.  As such, the Court lacks the authority to award money damages for claims in which the plaintiffs are not legally entitled.  Because Plaintiffs have not identified a non-discretionary directive that Defendants failed to follow, no waiver of sovereign immunity applies.  Plaintiffs' Stafford Act and FTCA claims against the United States and the remaining defendants in their official capacities must be dismissed for lack of subject matter jurisdiction.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 13)** filed by the United States of America, Michael Chertoff, in his official capacity as Secretary of Homeland Security, the United States Department of Homeland Security, Michael Leavitt, in his official capacity as Secretary of Health and Human Services, the Department of Health and Human Services, Donald Rumsfeld, in his official capacity as Secretary of Defense, the Federal Emergency

22

Management Agency, and Michael Brown, in his official capacity as former director of the Federal Emergency Management Agency should be and is hereby **GRANTED**.

April 30, 2007

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

23